IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RTAYVIAN SIMPSON (03), | ) |
| SHEVEL M. FOY (04), | ) |
| DONNIE R. JOHNSON (09), | ) |
| MICHAEL O. CLARK (16), | ) Case No. 07-20168-JWL |
| BYRON BROWN (19), | ) |
| LATYSHA D. TEMPLE (20), | ) |
| and | ) |
| KEITH McDANIEL (22), | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **MEMORANDUM AND ORDER**

On Monday, October, 20, 2008, the court held a motion hearing in *United States v. Humphrey*, Case No. 07-20158, taking up the motions to sever by various defendants.[1] This case involves a year and a half investigation, including four months of wiretap interceptions. The superseding indictment (Doc. 50) filed on February 1, 2007 charges

---

[1] "Defendant Rtayvian Simpson's Motion to Sever, With Incorporated Suggestions in Support" (Doc. 395), "Defendant Shevel Foy's Motion for Severance of Defendants" (Doc. 410), Donnie Johnson's "Motion to Sever" (Doc. 406), Michael O. Clark's "Motion for Severance, with Suggestions for Support" (Doc. 404), Byron Brown's "Motion to Sever" (Doc. 372), "Defendant Temple's Motion to Sever" (Doc. 397), and "Defendant Keith McDaniel's Motion to Sever" (Doc. 334).

thirty-nine counts against the remaining twenty-three defendants.  All of the defendants are charged in count 1 with conspiracy to manufacture, possess with intent to distribute, and distribute fifty grams or more of cocaine base and five kilograms or more of cocaine. Each defendant is also charged with at least one other substantive count.  At the motion hearing, counsel for each defendant and the government were given opportunity to expand on the arguments made in their briefs, including proffering what evidence is anticipated at trial, and then the court took the motions under advisement.  For the reasons discussed below, each motion to sever is denied.

**Motion to Sever Standard**

Rule 8(b) of the Federal Rules of Criminal Procedure provides that defendants may be charged together "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  "There is a preference in the federal system for joint trials of defendants who are indicted together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993).  Especially in a conspiracy case, like the one involved here, there is a preference that defendants who are charged together should be tried together.  *United States v. Small*, 423 F.3d 1164, 1181 (10th Cir. 2005) (citing *United States v. Hack*, 782 F.2d 862, 870 (10th Cir. 1986).  *See also United States v. Iiland*, 254 F.3d 1264, 1269-70 (10th Cir. 2001) (citing *United States v. Edwards*, 69 F.3d 419, 434 (10th Cir. 1995)).  "'In deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a joint trial of co-defendants against the expense and inconvenience of

separate trials."' *Small*, 423 F.3d 1181 (quoting *Hack*, 782 F.2d at 870). Federal Rule

of Criminal Procedure 14 permits a district court to grant a severance of defendants if

"it appears that a defendant or the government is prejudiced by a joinder." Fed. R. Crim.

P. 14. In *Zafiro*, the Supreme Court explained:

> [A] district court should grant severance under Rule 14 only if there is a serious
> risk that a joint trial would compromise a specific trial right of one of the
> defendants, or prevent the jury from making a reliable judgment about guilt or
> innocence. Such a risk might occur when the evidence that the jury should not
> consider against a defendant and that would not be admissible if a defendant were
> tried alone is admitted against a codefendant. For example, evidence of a
> codefendant's wrongdoing in some circumstances erroneously could lead a jury
> to conclude that a defendant was guilty. When many defendants are tried
> together risk of prejudice is heightened. Evidence that is probative of a
> defendant's guilt but technically admissible only against a codefendant also might
> present a risk of prejudice.

506 U.S. at 539 (internal citations omitted). While it is true that a district court is more

likely to determine separate trials are necessary when the risk of prejudice is high, the

Tenth Circuit has made clear that "'less drastic measures, such as limiting instructions,

often will suffice to cure any risk of prejudice.'" *United States v. Rodriguez-Aguirre*,

108 F.3d 1228, 1234 (10th Cir. 1997) (quoting *Zafiro*, 506 U.S. at 539). "Rule 14 leaves

the determination of risk of prejudice and any remedy for such prejudice to the sound

discretion of the district court." *Id.* (citing *Zafiro*, 506 U.S. at 541).

Each of the defendants filing motions to sever in this case argues that severance

is merited because there is a possibility that the government's evidence presented against

the seemingly more culpable or involved defendants will spill over and taint the other

defendants in the eyes of the jury. The Tenth Circuit has found that "[n]either the mere

allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' . . . is sufficient to warrant severance." *United States v. Powell*, 982 F.2d 1422, 1432 (10th Cir. 1992); *see also United States v. Cardall*, 885 F.2d 656, 668 (10th Cir. 1989); *United States v. Hack*, 782 F.2d 862, 870 (10th Cir. 1986). "When sufficient evidence is presented to connect the defendant to the conspiracy charged, his argument that severance is required due to the overwhelming evidence against co-defendants is without merit." *United States v. Espinosa*, 771 F.2d 1382, 1409 (10th Cir. 1985). In addition, potential "spillover" can be cured with proper limiting instructions at trial. *See Zafiro*, 506 U.S. at 539 (noting trial court's use of limiting instructions will often serve to cure any risk of prejudice caused by joint trial); *United States v. Emmons*, 24 F.3d 1210, 1219 (10th Cir. 1994) (concluding jury instructions eliminated any alleged spillover effect of disproportionate evidence presented against co-defendant).

**Defendants' Motions to Sever**

*Rtayvian Simpson (03)*

The government has charged Mr. Simpson in three counts of the superseding indictment.[2] In his motion to sever, Mr. Simpson seeks to be tried separately from the

---

[2] Conspiracy "to manufacture, to possess with intent to distribute and to distribute 50 grams or more of cocaine base 'crack,' a controlled substance and, to possess with intent to distribute and to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine," "knowingly and intentionally attempt[ing] to possess with intent to distribute five kilograms or more of a mixture and substance (continued...)

other defendants because, he argues, a joint trial would prejudice him due to the possibility of spillover and the discrepancy in the amount of evidence between the various defendants.  Mr. Simpson argues that the government's evidence against him consists of one isolated incident.  Even if it is true that the government's evidence is so limited, the counts charged against Mr. Simpson indicate alleged substantive involvement in distribution of cocaine.  Nevertheless, contrary to his assertion that limiting instructions would be inadequate, any potential problems with spillover can be cured with proper limiting instructions at trial.  The Tenth Circuit has made clear that where there is sufficient evidence connecting the defendant to the conspiracy, arguments regarding discrepancy in evidence between co-defendants are unpersuasive.  *See Espinosa*, 771 F.2d at 1409.

In deciding a motion for severance, the district court has a duty to weigh the prejudice resulting from a joint trial of co-defendants against the expense and inconvenience of separate trials.  Mr. Simpson has failed to show prejudice that would outweigh the benefit of a single trial. The public will benefit by one trial due to the intertwined nature of the evidence.  A single trial makes for a process which is not only more economical and efficient, but also more fair than if there were a series of trials

_____

(...continued)

containing a detectable amount of cocaine" with Thomas Humphrey and Monterial Wesley on or about November 27, 2007, and "knowingly, intentionally and unlawfully us[ing] and carry[ing] a firearm. . .  during and in relation to. . . [and] in furtherance of a drug trafficking crime" with Mr. Wesley on or about November 27, 2007.  (Doc. 50, at Counts 1, 38, and 39).

which at worst could produce inconsistent results because of the different triers of fact or at least would afford the various defendants separated from the main case fortuitous unwarranted discovery of the government's case to the later tried defendants and a "test run" for the government to hone its presentation against any later tried defendants. The court believes that proper jury instructions can protect against whatever legitimate concern Mr. Simpson has about spillover of evidence offered exclusively as to one set of charges or defendants.  Therefore, Mr. Simpson's motion to sever (Doc. 395) is denied.

*Shevel Foy (04)*

The government has charged Mr. Foy in five counts of the superseding indictment.[3]  Mr. Foy argues in his motion to sever that the defendants are improperly joined under Rule 8, and under Rule 14, the district court should grant discretionary

---

[3]Conspiracy "to manufacture, to possess with intent to distribute and to distribute 50 grams or more of cocaine base 'crack,' a controlled substance and, to possess with intent to distribute and to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine," "knowingly and intentionally attempt[ing] to possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine" on or about September 5, 2007 with Mr. Humphrey,  Mr. Wesley and Taneiah Johnson, "knowingly and intentionally attempt[ing] to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine" on or about September 13, 2007 with Mr. Humphrey and Mr. Wesley, "knowingly and intentionally attempt[ing] to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine" on or about September 28, 2007 with  Mr. Humphrey and Mr. Wesley, and finally, "knowingly and intentionally us[ing] a communication facility, a cellular telephone, in committing, causing, and facilitating the offense set forth in Count 1" with Mr. Wesley on or about November 27, 2007.  (Doc. 50, at Counts 1, 17, 22, 29, and 37).

severance because of the danger of spillover.  (Doc. 410, at 2-4).  Mr. Foy argues that the government has improperly joined multiple conspiracies into one single indictment because many of the defendants have little or no connection to one another.  However, the government contends Mr. Foy "was one of the main/major conspirators, the partner in crime of Monterial Wesley and would often accompany Wesley during his 'runs.'" (Government's Response to Defendants' Motions to Sever, Doc. 423 at 8).  In fact, Mr. Foy is charged by the government in three substantive distribution counts–count 17: "knowingly and intentionally attempt[ing] to possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine" on or about September 5, 2007 with Mr. Humphrey,  Mr. Wesley and Taneiah Johnson, count 22: "knowingly and intentionally attempt[ing] to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine" on or about September 13, 2007 with Mr. Humphrey and Mr. Wesley, and count 29: "knowingly and intentionally attempt[ing] to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine"on or about September 28, 2007 with  Mr. Humphrey and Mr. Wesley.  (Doc. 50, at Counts 17, 22, and 29).  Based on Mr. Foy's alleged involvement, it appears Mr. Foy was integral to the furtherance of this drug conspiracy, and thus, he is properly joined in count 1.  Regarding his argument of prejudicial spillover, as discussed above, such an argument is unpersuasive where the possibility of appropriate safeguards by the district court, such as limiting instructions, can avoid any possible confusion of evidence.

7

Therefore, Mr. Foy's motion to sever (Doc. 410) is denied.

*Donnie Johnson (09)*

The government has charged Mr. Johnson in six counts of the superseding indictment.[4] Mr. Johnson argues in his motion to sever that he is "far less culpable than the individuals charged with more substantive offenses" and "that the jury would not be able to separate the evidence against him from that which is only relevant to the actions of his co-defendants." ("Suggestions in Support of Motion to Sever," Doc. 407, at 4, 5). Mr. Johnson argues that because the evidence against the other defendants is stronger than the evidence against him, the introduction of that evidence could potentially have a "spillover effect" on him. However, such a spillover argument is unpersuasive. Rule 14 does not compel severance if the trial court, in its discretion, creates a remedy which abates the risk of prejudice. Mr. Johnson has failed to show that less drastic measures, like limiting instructions, would not suffice to cure the risk of prejudice. Mr. Johnson

---

[4]Conspiracy "to manufacture, to possess with intent to distribute and to distribute 50 grams or more of cocaine base 'crack,' a controlled substance and, to possess with intent to distribute and to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine," "knowingly and intentionally possess[ing] with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine base, 'crack,'" on or about August 5, 2007, "knowingly, intentionally and unlawfully use and carry of firearm. . . during and in relation to. . .[and] in furtherance of a drug trafficking crime" on or about August 5, 2007, felon in possession of firearm, "knowingly and intentionally us[ing] a communication facility, a cellular telephone, in committing, causing, and facilitating the offense set forth in Count 1 " on or about September 13, 2007 with Henry Grigsby, and "knowingly and intentionally distribut[ing] 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, 'crack,'" with Mr. Grigsby and James Heags on or about September 14, 2007. (Doc. 50, at Counts 1, 6, 7, 8, 23, and 24).

8

also has not shown a serious risk that a specific trial right will be compromised or that the jury will be prevented from making a reliable judgment. Therefore, the court concludes Mr. Johnson has failed to show any risk of prejudice that outweighs the expense and inconvenience of separate trials. Consequently, Mr. Johnson's motion to sever (Doc. 406) is denied.

*Michael O. Clark (16)*

The government has charged Mr. Clark in three counts of the superseding indictment.[5] In his motion to sever (Doc. 404), Mr. Clark asserts three bases for severance: 1) to relieve prejudicial variance, 2) to relieve prejudice caused by the impact of co-defendants, namely enhanced culpability or adverse trial tactics, and 3) to make an unwieldy case more manageable.

Mr. Clark argues that "[t]here are indications of prejudicial variances in the discovery provided by the government." (Doc. 404, at 3). Mr. Clark believes that the government intends to present evidence of marijuana distribution against him while it has charged him in the superseding indictment with being involved in a cocaine distribution

---

[5] Conspiracy "to manufacture, to possess with intent to distribute and to distribute 50 grams or more of cocaine base 'crack,' a controlled substance and, to possess with intent to distribute and to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine," "knowingly and intentionally distribut[ing] a quantity of a mixture and substance containing a detectable amount of cocaine base, 'crack'" with Kurtz Griffin on or about September 3, 2007, and "knowingly and intentionally us[ing] a communication facility, a cellular telephone, in committing, causing, and facilitating the offense set forth in Count 1 " on or about November 26, 2007  with Mr. Wesley. (Doc. 50, at Counts 1, 16, and 33).

conspiracy.   Mr. Clark has also filed a motion in limine (Doc. 399) regarding the exclusion of this evidence.  The motion in limine seems to be the more appropriate means of limiting the use of the evidence that does not conform with the charged conspiracy. The government stressed in its response to Mr. Clark's motion to sever that its allegations against Mr. Clark in this conspiracy deal with his distribution of "crack" cocaine, not marijuana.  Therefore, it does not appear as though the government is attempting to pursue a prejudicial variance.

Mr. Clark also argues that his joint trial with the indicted co-defendants is unduly prejudicial.  Like the other defendants seeking severance, he argues that other defendants have a greater degree of culpability in the conspiracy, and by trying him with them, the jury would be unable to separate the evidence against Mr. Clark and the evidence against the other defendants.   However, such a spillover effect can be mitigated by proper limiting instructions, and therefore, does not merit granting this severance motion.  Mr. Clark also contends that trying him with the other co-defendants is prejudicial because of the likelihood of antagonistic co-defendants.  At the motion hearing, Ms. Morehead, the prosecutor in the case, explained that she did not have any indication that any of the defendants planned on "lying in wait" as Mr. Clark feared with an antagonistic co-defendant.  She described such a possibility as "at best speculative at this point."  Mr. Duchardt, Mr. Clark's attorney, also admitted that at this point in his review of the discovery a possibility of antagonistic defenses remained theoretical at best. While it is true that prejudice can result when co-defendants take it upon themselves to become

10

secondary prosecutors, "the mere possibility of antagonistic defenses provides an inadequate basis for severing trials." *United States v. Dirden*, 38 F.3d 1131, 1141 (10th Cir.1994)

Finally, Mr. Clark has raised the practical issue of the manageability of a trial containing twenty-three defendants. Mr. Clark cites two cases for the proposition that some courts have cited the avoidance of a "circus-like atmosphere" in granting severance. *See, e.g.*, *United States v. Haworth*, 168 F.R.D. 658, 659 (D.N.M. 1996); *United States v. Casamento*, 887 F.2d 1141, 1151-52 (2d Cir. 1989). However, these cases do not fully stand for the proposition as presented by Mr. Clark. In *Haworth*, the court primarily discussed the prejudice involved in trying some defendants that were only charged with drug crimes given that others were charged with violent crimes that were subject to the death penalty. In *Casamento*, the Second Circuit merely discussed guidelines the district court should consider when faced with seemingly unwieldy cases; however, the district court in that case actually tried twenty-one defendants at one time. Therefore, in both of the cases cited by Mr. Clark, the courts did not truly sever for manageability concerns. In addition, this seems too early a stage in the process to grant severance based solely on such a concern. As the government reassured the court in its response to Mr. Clark's motion, "[a]t the present time, the Government has verbal commitments from more than half of the charged defendants that their cases will be worked out by way of plea agreement." (Doc. 423, at 9). Given the government's intentions regarding plea agreements, the presence of a "circus-like atmosphere" as described by Mr. Clark seems

11

unlikely.  Therefore, Mr. Clark's motion to sever (Doc. 404) is denied.

*Byron Brown (19)*

The government has charged Mr. Brown in two counts in the superseding indictment.[6]  Mr. Brown emphasizes in his motion to sever "the great disparity" of evidence against Mr. Brown and his co-defendants, and argues the spillover effect merits granting his motion to sever.  Mr. Brown highlights in his argument regarding the prejudicial nature of the evidence likely to be introduced against the other defendants that unlike the "more culpable" defendants  Mr. Brown is not charged with any substantive drug offense, like possession or distribution of cocaine, and Mr. Brown also has no counts involving the use or possession of firearms.  Nonetheless, his argument concerning the prejudice involved with "spillover" is unpersuasive.  The Tenth Circuit has held that complaints of the "spillover effect" are insufficient to warrant severance because proper limiting instructions can be given by the district court to cure such prejudice.  Therefore, and for the reasons related to what was set forth by counsel at sidebar at the hearing,  Mr. Brown's motion to sever (Doc. 372) is denied.

*Latysha Temple (20)*

---

[6]Conspiracy "to manufacture, to possess with intent to distribute and to distribute 50 grams or more of cocaine base 'crack,' a controlled substance and, to possess with intent to distribute and to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine" and "knowingly and intentionally us[ing] a communication facility, a cellular telephone, in committing, causing, and facilitating the offense set forth in Count 1 " on or about August 6, 2007 with Mr. Grigsby.  (Doc. 50, at Counts 1 and 10).

The government has charged Ms. Temple in two counts in the superseding indictment.[7]  Ms. Temple argues in her motion to sever that she would be unduly prejudiced by a spillover effect, and if her motion to sever was granted, Mr. Wesley would testify on her behalf and provide exculpatory testimony that she was not involved in the drug conspiracy.  As has already been repeatedly discussed above, the mere complaint of a spillover effect is insufficient to warrant granting a motion to sever.  With respect to Ms. Temple's argument that Mr. Wesley would provide exculpatory testimony for her if she were to be tried separately, this appears to be a bare assertion of a possibility.  Ms. Temple states in her motion to sever that "[i]t is anticipated that Mr. Wesley could be called to testify, thus providing exculpatory evidence in defense of Temple." (Doc. 397, at 3).  In *United States v. McConnell*, the Tenth Circuit laid out seven factors relevant to evaluating Ms. Temple's claim that the court should grant her motion to sever to present exculpatory evidence from Mr. Wesley:

> 1) the likelihood that the co-defendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege; 2) the significance of the testimony in relation to the defendant's theory of defense; 3) the exculpatory nature and effect of such testimony; 4) the likelihood that the co-defendant's testimony would be impeached; 5) the extent of prejudice caused by the absence of the testimony; 6) the effect of a severance on judicial administration and

---

[7]Conspiracy "to manufacture, to possess with intent to distribute and to distribute 50 grams or more of cocaine base 'crack,' a controlled substance and, to possess with intent to distribute and to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine" and "knowingly and intentionally us[ing] a communication facility, a cellular telephone, in committing, causing, and facilitating the offense set forth in Count 1 " on or about September 10, 2007 with Mr. Wesley. (Doc. 50, at Counts 1 and 19).

economy; 7) the timeliness of the motion.

749 F.2d 1441, 1445 (10th Cir. 1984); *see also United States v. Martinez*, 76 F.3d 1145, 1152 (10th Cir.1996).   Ms. Temple does not provide any information concerning what Mr. Wesley would say and does not give any indication on the actual likelihood of Mr. Wesley testifying; for instance, by providing an affidavit from Mr. Wesley detailing his willingness to testify on her behalf.  Therefore, it is impossible for the court to evaluate and grant Ms. Temple's motion to sever on this basis because Ms. Temple's motion does not touch upon any of these factors outlined in *McConnell*.   Therefore, Ms Temple's motion to sever (Doc. 397) is denied.

*Keith McDaniel (22)*

The government has charged Mr. McDaniel in two counts in the superseding indictment.[8]  In his motion to sever, Mr. McDaniel wants to be tried separately due to the undue prejudice of the possibility of spillover and the discrepancy in the amount of evidence against him and the various other defendants.  Mr. McDaniel argues that the government's case against him rests on merely one phone conversation occurring on November 26, 2007.   However, according to the government's response to Mr.

---

[8] Conspiracy "to manufacture, to possess with intent to distribute and to distribute 50 grams or more of cocaine base 'crack,' a controlled substance and, to possess with intent to distribute and to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine" and "knowingly and intentionally us[ing] a communication facility, a cellular telephone, in committing, causing, and facilitating the offense set forth in Count 1 " on or about November 26, 2007 with Mr. Wesley.  (Doc. 50, at Counts 1 and 34).

McDaniel's motion to sever, the government actually "intercepted some seventy (70) calls between Wesley and McDaniel" during which "drug trafficking activities were discussed including prices, quantities, having received some 'bad dope,' and possessing firearms." (Doc. 427, at 1). At the motion hearing, Ms. Morehead further described Mr. McDaniel's alleged role in the conspiracy, explaining that he received cocaine from Mr. Wesley and he was a major supplier of cocaine to the Columbia, Missouri area. Ms. Morehead also pointed out that the government had set up a controlled buy from Mr. McDaniel in the course of its investigation of the drug conspiracy. Mr. McDaniel's argument that the only evidence the government has pertaining to his involvement in the conspiracy is one phone call is unpersuasive in light of Ms. Morehead's explanations at the motion hearing. Mr. McDaniel argues that trying him with the co-defendants is prejudicial under Rule 14. However, as discussed repeatedly above, a mere allegation that a defendant might have a better chance for acquittal in a separate trial or a complaint concerning a spillover effect is insufficient to warrant severance. Mr. McDaniel has failed to show there is a serious risk that a specific trial right will be compromised or that the jury will be prevented from making a reliable judgment. Therefore, the court concludes Mr. McDaniel has failed to show any risk of prejudice that outweighs the expense and inconvenience of separate trials. Consequently, Mr. McDaniel's motion to sever (Doc. 334) is denied.

IT IS THEREFORE ORDERED BY THE COURT THAT Mr. Simpson's motion

to sever (Doc. 395) is **denied**.

IT IS THEREFORE ORDERED BY THE COURT THAT Mr. Foy's motion to sever (Doc. 410) is **denied**.

IT IS THEREFORE ORDERED BY THE COURT THAT Mr. Johnson's motion to sever (Doc. 406) is **denied**.

IT IS THEREFORE ORDERED BY THE COURT THAT Mr. Clark's motion to sever (Doc. 404) is **denied**.

IT IS THEREFORE ORDERED BY THE COURT THAT Mr. Brown's motion to sever (Doc. 372) is **denied**.

IT IS THEREFORE ORDERED BY THE COURT THAT Ms. Temple's motion to sever (Doc. 397) is **denied**.

IT IS THEREFORE ORDERED BY THE COURT THAT Mr. McDaniel's motion to sever (Doc. 334) is **denied**.

IT IS SO ORDERED.

Dated this 30th day of October, 2008, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

16