# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**United States of America,**

**Plaintiff/Respondent,**

**v.**
                                                        **Case No. 07-20168-04-JWL**
                                                        **Case No. 12-2677-JWL**

**Shevel M. Foy,**

**Defendant/Petitioner.**

## MEMORANDUM & ORDER

On February 1, 2008, Shevel Foy was charged along with twenty-three other individuals in a 39-count superseding indictment. Pertinent to the motion presently pending in this case, Mr. Foy was charged with one count of conspiracy to manufacture, to possess with intent to distribute, or to distribute cocaine base and/or cocaine between January 2006 and November 27, 2007. At trial, much of the government's evidence against Mr. Foy consisted of incriminating conversations intercepted from a telephone belonging to Monterial Wesley, one of Mr. Foy's co-defendants. *See United States v. Foy*, 641 F.3d 455, 461 (10th Cir. 2011). These conversations revealed that Mr. Foy and Mr. Wesley were partners in drug trafficking. *Id.* By way of example, officers intercepted conversations in which Mr. Foy and Mr. Wesley: (1) discussed pooling their money together to pay for large quantities of cocaine; (2) discussed how to resolve an $8000 deficiency in their payments to their drug source, Thomas Humphrey; (3) coordinated the distribution of large amounts of fronted drugs; and (4) discussed absconding with large amounts of fronted drugs. *Id.* A jury ultimately found Mr. Foy guilty of the conspiracy charge and the court sentenced Mr. Foy on the conspiracy charge to 360 months' imprisonment. The

Tenth Circuit subsequently affirmed Mr. Foy's conviction and sentence on the conspiracy charge. *Id*. at 470.

This matter is now before the court on Mr. Foy's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 1485) and Mr. Foy's amended motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 1516).  In those motions, Mr. Foy presents two claims.[1]  He contends first that his Sixth Amendment right to counsel was violated because his trial counsel represented him while acting under a financial conflict of interest.  He further claims that Mr. Wesley has come forward with new evidence in the form of an affidavit which demonstrates Mr. Foy's actual innocence.  As explained in more detail below, the court denies Mr. Foy's motions and denies Mr. Foy's request for an evidentiary hearing.

**Ineffective Assistance of Counsel Claim**

Mr. Foy contends that he received ineffective assistance of counsel in violation of his Sixth Amendment rights because his trial counsel had a financial conflict of interest that adversely affected Mr. Foy's defense at trial.  In support of this claim, Mr. Foy submits the affidavit of Keith Scott, a friend of Mr. Foy's, who avers that Mr. Foy's trial counsel, a solo practitioner, told him that Mr. Foy was trying to "bankrupt" him by proceeding to trial rather than accepting a plea offer.  According to Mr. Foy, then, his trial counsel, worried about the expense of a lengthy trial, failed to prepare adequately for trial and focused his efforts instead on reaching a plea agreement with the government.

---

[1] Mr. Foy's amended petition sets forth the same claims as his initial petition, but offers additional evidence and legal argument in support of those claims.

Mr. Foy asserts this specific claim under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), in which the Supreme Court held that a petitioner advancing an ineffective assistance claim based on a conflict-of-interest must show specific instances in the record "that demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id*. at 348. Importantly, the "possibility of conflict is insufficient to impugn a criminal conviction." *Id*. at 350. Instead, the petitioner must show that "his counsel actively represented conflicting interests." *Id*. In an effort to show an "actual" financial conflict of interest, Mr. Foy makes conclusory assertions such as "[a]s a solo practitioner, [trial counsel] did not have the interest or resources to prepare for and defend Mr. Foy at a complex, five-week trial" and that trial counsel "should not have taken Mr. Foy's case unless he had the resources to adequately prepare for the complexity and duration of Mr. Foy's trial."[2]

The Tenth Circuit analyzed and rejected such a claim in *United States v. Ohiri*, 287 Fed. Appx. 32 (10th Cir. 2008). In that case, the petitioner alleged an actual financial conflict of interest based on the fact that he owed a $35,000 debt to his trial counsel and that the debt caused his trial counsel to fail to zealously advocate on his behalf and to pressure the petitioner to plead guilty. *Id*. at 38. The Circuit held that the mere existence of a debt did not give rise to an actual conflict, but showed only the possibility of a conflict. *Id*. According to the Circuit, the petitioner was required to set forth "specific examples showing that [trial counsel] put his own

---

[2] Because the court concludes that Mr. Foy has not shown an actual financial conflict of interest, it need not decide whether Mr. Foy has satisfied the "adverse effect" prong of *Cuyler*. For this reason, the court does not address Mr. Foy's complaints that his trial counsel failed to impeach two government witnesses at trial with prior inconsistent statements and failed to present evidence at sentencing refuting the drug quantity attributable to Mr. Foy and to present evidence to refute Mr. Foy's role in the offense or the firearm enhancement.

financial interests ahead" of the petitioner's interests. *Id*. The petitioner submitted an affidavit of his trial counsel in which trial counsel averred that he did not retain experts to aid in trial preparation because his client could not afford the costs and that if the case had proceeded to trial, he would have requested a continuance because he was not prepared to proceed, having just completed a trial in another matter. *Id*. at 38-39.

The Circuit held that trial counsel's affidavit did not show the existence of an actual conflict of interest because the statements showed only the possibility of a conflict, noting that counsel did not state that the existing debt caused him to forego retaining experts or rendered him unprepared for trial. *Id*. at 39. The Circuit also rejected the petitioner's arguments that his trial counsel's failure to effectively cross-examine witnesses was a result of the existing debt, where the petitioner pointed to no evidence linking the allegedly deficient performance to the existence of the debt. *Id*. Ultimately, then, the Circuit held that the petitioner's ineffective assistance claim failed because he could not demonstrate an actual conflict of interest. *Id*.

Mr. Foy's showing of a financial conflict of interest is much weaker than the showing made in Ohiri. Mr. Foy does not allege the existence of debt to his trial counsel or that there was a possibility that he would not be able to pay fees owed to his trial counsel. He has no evidence linking any decision made by trial counsel to a concern about Mr. Foy's ability to pay fees or costs. There is no evidence whatsoever that trial counsel ever put his own financial interests before Mr. Foy's interests. Even the "bankrupt" comment made by trial counsel to Mr. Scott fails to show an actual conflict in the absence of evidence that trial counsel made defense decisions based on a concern that the trial or trial preparation was too costly. Because Mr. Foy,

at most, has shown only the possibility of a financial conflict of interest, his ineffective assistance claim under *Cuyler* fails.


**Newly Discovered Evidence**

In addition to his ineffective assistance of counsel claim, Mr. Foy presents a claim of newly discovered evidence of actual innocence which he contends warrants vacating his amended judgment and sentence. Specifically, Mr. Foy submits the affidavit of Monterial Wesley, one of Mr. Foy's co-defendants and co-conspirators, which purportedly establishes that Mr. Foy was never a part of the conspiracy. During Mr. Foy's trial, Mr. Wesley invoked his Fifth Amendment right and refused to testify. As Mr. Foy concedes, the Tenth Circuit has held that when "a former codefendant who originally chose not to testify subsequently comes forward and offers testimony exculpating a defendant, the evidence is not newly discovered if the defendant was aware of the proposed testimony prior to trial." *United State v. Muldrow*, 19 F.3d 1332, 1339 (10th Cir. 1994). In *Muldrow*, a codefendant who refused to testify at the defendant's suppression hearing later testified at trial and the defendant argued that the trial testimony was "newly discovered" evidence sufficient to require the court to reconsider its suppression ruling such that the defendant was entitled to a new trial with the evidence suppressed. *Id*. The Circuit concluded that the testimony was not newly discovered because "the substance of his testimony was known to defendant's counsel prior to trial." *Id*. The co-defendant's trial testimony corroborated the defendant's theory that the defendant was not under arrest at the time he was searched. *Id*.

Attempting to distinguish *Muldrow*, Mr. Foy asserts that he was not aware of Mr. Wesley's testimony prior to trial because Mr. Wesley did not provide a statement prior to trial "from which Mr. Foy could glean what exactly his trial testimony, if any would reveal" and because Mr. Foy could not compel Mr. Wesley to testify at trial. The court is not persuaded and concludes that Mr. Wesley's testimony, while perhaps newly available, is not newly discovered. In his affidavit, Mr. Wesley avers that Foy was "merely a customer" of Mr. Wesley's; that he never gave drugs to Mr. Foy on consignment; that they did not have an agreement to sell drugs together; that they never shared any profits from any of Mr. Wesley's activities involving Thomas Humphrey; that Mr. Foy was never present when Mr. Wesley purchased drugs from Mr. Humphrey; and that Mr. Wesley never relied upon Mr. Foy as his supplier or mediator in the drug trade. Of course, the nature and extent of the relationship between Mr. Foy and Mr. Wesley as it concerns any drug conspiracy was clearly within the knowledge of Mr. Foy at the time of trial. In fact, in his petition, Mr. Foy states that he advised his counsel immediately upon retaining counsel that he was merely a customer of Mr. Wesley's and that he was not a co-conspirator. He further states in his petition that the affidavit of Mr. Wesley simply "confirms" that Mr. Foy had no part in the conspiracy.

Consequently, the evidence from Mr. Wesley of Mr. Foy's participation (or lack thereof) in the conspiracy cannot be considered "newly discovered." *United States v. Maestas*, 523 F.2d 316, 320 (10th Cir. 1975) (defendant's prior relationship with witness was clearly within defendant's knowledge such that witness's testimony was not newly discovered). Like the factual context in *Muldrow*, Mr. Wesley's affidavit simply corroborates Mr. Foy's theory of the case—that he was simply a "customer" of Mr. Wesley's and not a co-conspirator—and Mr. Foy,

had he elected to testify, could have presented the same information at trial to the jury.[3]  Mr. Foy, then, was certainly aware that Mr. Wesley could have provided exculpatory testimony at trial.  Because all of the information contained in Mr. Wesley's affidavit was known to Mr. Foy at the time of trial, the information is not "newly discovered" for purposes of collateral review.

Finally, Mr. Foy asserts that even if the court determines that the affidavit is not "newly discovered," Mr. Foy's claim nonetheless warrants a new trial because the affidavit demonstrates Mr. Foy's actual innocence.  This argument is rejected.  In the absence of newly discovered evidence, Mr. Foy simply cannot establish a credible claim of actual innocence.  *See United States v. Williams*, 480 Fed. Appx. 503, 504 (10th Cir. 2012); *United States v. Jackson*, 429 Fed. Appx. 757, 760 (10th Cir. 2011) (freestanding claim of actual innocence is not a proper basis for habeas relief).  In any event, Mr. Wesley's affidavit does not establish Mr. Foy's actual innocence of the conspiracy charged in the case, particularly in light of the government's substantial evidence supporting the jury's verdict—namely, the intercepted conversations between Mr. Foy and Mr. Wesley demonstrating Mr. Foy's participation in the conspiracy.


**Certificate of Appealability**

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  "A certificate of appealability may issue . . .  only if the applicant has

---

[3] The court does not mean to suggest that Mr. Foy should have waived his privilege against self-incrimination by testifying to the information contained in Mr. Wesley's affidavit.  Rather, the court is simply highlighting the fact that the information contained in Mr. Wesley's affidavit, without exception, was within Mr. Foy's knowledge.

made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). With respect to the claims dismissed above, for the same reasons stated, Mr. Foy has not made a substantial showing of the denial of a constitutional right; the court therefore denies a certificate of appealability with respect to those issues.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Foy's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (doc. 1485) is denied and Mr. Foy's amended motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (doc. 1516) is denied.

**IT IS SO ORDERED.**

Dated this 17th day of April, 2013, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge