# UNITED STATES DISTRICT COURT

## District of Kansas

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                CASE NO. 07-20168-JWL

SHEVEL M. FOY,

        Defendant.

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
### (Doc. 2026)

The United States of America, by and through undersigned counsel, respectfully submits the following response to the defendant's motion for compassionate release.

## I.   PROCEDURAL HISTORY

On May 15, 2009, the defendant was found guilty of Count 1 (conspiracy to manufacture, to possess with intent to distribute and to distribute 50 grams or more of cocaine base and to possess with intent to distribute and to

distribute 5 kilograms or more of cocaine), and Counts 17, 22, and 29 (attempted possession with intent to distribute five kilograms or more of cocaine), and not guilty of Count 37 (use of a communication facility). (Jury Verdict, Doc. 803; Judgment of Acquittal dated June 8, 2009, Doc. 828.)    The defendant filed a Motion for Judgment of Acquittal and a Motion for a New Trial, with supporting memorandums. (Motion for Acquittal, Doc. 785; Motion for New Trial, Doc. 786; Memorandum in Support, Docs. 852, 853.) The Court granted the defendant a judgment of acquittal as to Counts 17 and 29 but denied his motions as to all other claims.    (Memorandum and Order dated August 14, 2009, Doc. 963; Judgment of Acquittal dated September 16, 2009, Doc. 1021.)

The defendant was committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 360 months. (Doc. 1121, Am. Judgment at 2, filed November 16, 2009.)

The defendant filed a timely notice of appeal. (Notice of Appeal, Doc. 1091.) The Tenth Circuit affirmed Foy's conviction on the conspiracy charge (Count 1); however, it found the Government had not established venue as to the attempt conviction (Count 22) and vacated that conviction. (Mandate dated June 14, 2011, Doc. 1340; Doc. 1346, Am Judgment.) The defendant filed a

2

petition for writ of certiorari, which was also denied on October 18, 2011. (Doc. 1400.)

On October 17, 2012, the defendant filed a Motion to Vacate under 28 U.S.C. 2255.   (Doc. 1485, Mot. to Vacate.)    The motion was denied on April 17, 2013. (Doc. 1564, Ord.)   The defendant appealed (doc. 1589, Notice of Appeal) and the Tenth Circuit dismissed the appeal on September 30, 2013 (doc. 1626).

On October 17, 2016, the defendant filed a motion for a reduction in sentence pursuant to Amendment 782. (Doc. 1776, Mot. to Reduce Sentence.) The defendant's motion was dismissed on January 18, 2017.   (Doc. 1786, Ord.) The defendant appealed (doc. 1788, Notice Appeal), and the appeal was dismissed on November 7, 2018.   (Doc. 1871, Mandate.)

On June 1, 2020, the defendant filed a motion for compassionate release. (Doc. 1912, Mot. for Release.)   The defendant's motion was dismissed for lack of jurisdiction.   (Doc. 1925, Ord.)

On May 9, 2022, the defendant filed the instant motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1]   (Doc. 2026,

---

[1] To the extent the defendant seeks release to home-confinement that request must be rejected. Under the CARES Act, Pub. L. 116-136, Mar. 27, 2020, 134 Stat. 281, § 12003(b)(2), this Court has no authority to place the defendant on home-confinement; that responsibility lies exclusively with the Director of the Bureau of Prisons. *United States v. Cumins*, 833 F. App'x

Mot. for Release.)

The defendant's projected good time release date from BOP is January 9,

2034.   (*Id.* at 2; https://www.bop.gov/inmateloc/ (last visited May 25, 2022).)



SHEVEL M FOY

Register Number: 11776-031

Age:    46
Race:   Black
Sex:    Male

Located at: Yazoo City Low FCI

Release Date: 01/09/2034

The defendant proposes a sentence reduction to time served and does not

provide any housing or employment details in his release plan, and only states

he would be employed immediately upon release and needs to care for his ailing

mother.   (Doc. 2026, Mot. for Release at 3, 5, 7-9; Doc. 2026-2, Proposed

Release Plan.)

Without a proper and approved release plan, the defendant cannot be

released. "An appropriate release plan is essential to ensure that a defendant

---

765, 766 (10th Cir. 2021) (noting that home confinement amounts to a designation of the home
as the place of imprisonment, a decision that is reserved to the BOP Director).

actually has a safe place to live and access to health care in these difficult times. Shortening a defendant's sentence where there is not an adequate release plan offers no benefit to the health of the inmate and in the process likely further endangers the community into which the defendant is released." *United States v. Allison*, 2020 WL 3077150 at *4 (W.D. Wash. June 10, 2020).

## II. ARGUMENT

In his motion, the defendant requests counsel be appointed to represent him. (Doc. 2026, Mot for Release at 8-9.) Because the opportunity for appointment of counsel has already been addressed by the Court, that request should be denied[2]. However, the defendant is not precluded from seeking the relief he desires on his own.

The defendant moves this Court for an Order of Compassionate Release due to the spread of COVID-19, the need to care for his ailing mother, his age, his rehabilitation efforts, and time already served. (Doc. 2026, Mot. for Release at 3.)

---

[2] Under the District of Kansas Standing Order 18-4, the Federal Public Defender was appointed to represent indigent defendants "to determine whether that defendant may qualify to seek reduction of sentence and to present any motions or applications for reduction of sentence in accordance with Section 404 of the First Step Act of 2018, which retroactively applies the Fair Sentencing Act of 2010." (Standing Order 18-4, http://ksd.uscourts.gov/index.php/local-rule/no-18-4-in-re-first-step-act-of-2018-dec-21-2018-application-of-fair-sentencing-act/ (last accessed May 25, 2022).)

The government objects to the defendant's motion for compassionate release and submits the following in support of its position.

## A.    Defendant's Obligations

The defendant is burdened with demonstrating that circumstances exist warranting this Court's consideration of compassionate release.   *See United States v. Rodriguez-Orejuela*, 457 F.Supp.3d 1275, 1282 (S.D. Fla. 2020) (noting that under the CARES Act / Section 3582(c) framework the defendant bears the burden of establishing that compassionate release is warranted); *United States v. Holden*, 452 F.Supp.3d 964, 969 (D. Ore. 2020) (noting that "[a] defendant seeking a reduction in his term of imprisonment bears the burden to establish both that he has satisfied the procedural prerequisites for judicial review and that compelling and extraordinary reasons exist to justify compassionate release."); *United States v. Epstein*, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020) (Slip Op.) ("Simply put, under the FSA, a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release.").[3]

---

[3] The defendant must also establish that he has a valid release plan in place. *See United States v. Allison*, 2020 WL 3077150, at *4 (W.D. Wash. June 10, 2020) ("An appropriate release plan is essential to ensure that a defendant actually has a safe place to live and access to health care

6

Here, the defendant falls short of satisfying the requirements for compassionate release under 3582(c)(1)(A)(i).   Thus, for the following reasons, this Court must overrule his motion and deny the requested relief.

B.   BOP's Response to the COVID-19 Pandemic[4]

As this Court is well-aware, COVID-19 is an extremely dangerous illness that has caused many deaths in the United States in a short period of time resulting in disruption to our society and economy.   In response to the pandemic, BOP has taken significant measures to protect the health of the inmates in its charge.[5]

---

in these difficult times. Shortening a defendant's sentence where there is no adequate release plan offers no benefit to the health of the inmate and in the process likely further endangers the community into which the defendant is release.")

[4] It should again be noted that BOP continues to prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 under the CDC risk factors—particularly those at institutions where there have been COVID-19 outbreaks—and BOP is devoting all available resources to executing on that directive. Additionally, BOP is devoting all available resources to assessing the inmate population to determine which inmates would be appropriate for transfer under this priority program and to then process those inmates for transfer as quickly as possible.

[5] Importantly, the mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction.   As the Third Circuit held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).   Thus, to classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement.

The Department of Justice has, consistent with the Centers for Disease Control (CDC), identified certain risk factors that place inmates at higher risk of complications from COVID-19.[6]  Thus, an inmate that presents with one of the named CDC factors, as confirmed by medical records, and who is not expected to recover from that condition, is deemed to have established an extraordinary and compelling reason allowing for consideration of compassionate release under Section 3582(c)(1)(A).  As noted by the Sentencing Commission, a specified and confirmed chronic medical condition presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), in that the inmate's ability to provide self-care against serious injury or death

---

Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, *not* the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

[6] The factors include the following: asthma (moderate to severe); cancer; chronic kidney disease; chronic lung disease, such as chronic obstructive pulmonary disease (COPD) (including emphysema and chronic bronchitis), idiopathic pulmonary fibrosis, and cystic fibrosis; diabetes, including type 1, type 2, or gestational; hemoglobin disorders, such as sickle cell disease and thalassemia; immunocompromised, including from cancer treatment, bone marrow or organ transplantation, immune deficiencies, HIV with a low CD4 cell count or not on HIV treatment, and prolonged use of corticosteroids and other immune weakening medications; liver disease, including cirrhosis; neurologic conditions such as dementia; serious heart conditions, including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension; and obesity, defined as a body mass index (BMI) of 25 kg/m$^2$ or above.

resulting from COVID-19 is substantially diminished, within the environment of the corrections facility, by the chronic condition itself.   To that same end, a defendant's medical condition "must be one of substantial severity and irremediability."   *United States v. Lisi*, 440 F.Supp.3d 246, 251 (S.D.N.Y. 2020); *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (relief is "rare" and "extraordinary"); *United States v. Polnitz*, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020) (must be extraordinary; "Many inmates suffer from pain and mental illness.")[7]

As of this pleading, BOP has 138,963 federal inmates in BOP-managed institutions and 13,441 in community-based facilities. The BOP staff complement is approximately 36,000. There are 88 federal inmates and 236 BOP

---

[7] That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A).   If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." *See* Centers for Disease Control, *People with Certain Medical Conditions*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?ACSTrackingID=USCDC_2067-DM76440&ACSTrackingLabel=People%20with%20Certain%20Medical%20Conditions%20%20%7C%20COVID-19&deliveryName=USCDC_2067-DM76440 (last updated on May 2, 2022).   Under these circumstances, a chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19.   See, e.g., U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

staff who have confirmed positive test results for COVID-19 nationwide. Currently, 51,448 inmates and 12,702 staff have recovered. There have been 295 federal inmate deaths and 7 BOP staff member deaths attributed to COVID-19 disease. Of the inmate deaths, 11 occurred while on home confinement.[8]

The defendant is presently incarcerated at FCI Yazoo City Low where there are 1,648 inmates, with 127 at the camp. See https://www.bop.gov/locations/institutions/yaz/ (accessed May 25, 2022). According to BOP statistics, https://www.bop.gov/coronavirus/ (accessed May 25, 2022) (screen shots attached below), that facility currently has only 2 inmates and no staff members who have COVID-19. There have been 3 inmate deaths and no staff deaths. BOP provided full inoculations for 3,114 inmates and 466 staff at Yazoo City FCC. Of the more than 128,720 BOP inmates tested, at least 1,268 tests have been administered to the inmates at Yazoo City Low FCI.

| Facility | Inmates Positive ▼ | Staff Positive | Inmate Deaths | Staff Deaths | Inmates Recovered | Staff Recovered | City | State |
|---|---|---|---|---|---|---|---|---|
| Yazoo City Low FCI | 2 | 0 | 3 | 0 | 179 | 21 | Yazoo City | MS |

The current modified operations plan for the BOP is stated in full at https://www.bop.gov/coronavirus/covid19_status.jsp. Taken together, these

---

[8] https://www.bop.gov/coronavirus/ (last visited May 25, 2022).

measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution.   BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Notably, "the BOP [is] committed to vaccinating all prisoners during the upcoming months."  *United States v. Davis*, 2021 WL 1016115, at *3 (S.D.N.Y. Mar. 17, 2021) (quoting *United States v. Maldonado*, 2021 WL 639069, at *3 (S.D.N.Y Feb. 17, 2021).   Records in this case show that the defendant refused the COVID-19 vaccine on April 12, 2021.   (See medical records snapshot below.).

**Bureau of Prisons**
**Health Services**
**Immunizations**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Begin Date:  05/18/2020 | | End Date:  05/18/2021 | | | | | | |
| Reg #:      11776-031 | | Inmate Name:  FOY, SHEVEL M | | | | | | |
| **Immunization** | **Immunization Date** | **Administered** | **Location** | **Dosage** | **Drug Mfg.** | **Lot #** | **Dose #** | **Exp Date** |
| COVID-19 Pfizer-BioNTech | 04/12/2021 | Refused | | | | | | |
| Orig Entered: 04/12/2021 13:52 EST   Jones, K. RN/IOP/IDC | | | | | | | | |
| **Total:  1** | | | | | | | | |

The defendant refuses to be vaccinated against COVID-19, and, courts have consistently held such refusal against a defendant seeking compassionate release.  *United States v. Greenlaw*, 2021 WL 1277958, at *6 (D. Me. Apr. 6, 2021) (collecting cases); *ee, e.g., United States v. Hargrove, 2021 WL 2210844, at *4*

(W.D.N.C. June 1, 2021) (finding the defendant's obesity "no longer qualifies as an 'extraordinary and compelling reason' here because Defendant has refused to be vaccinated"); *United States v. Jacobs*, 2021 U.S. Dist. LEXIS 92819, at *2 (W.D.N.C. May 17, 2021) (denying compassionate release where defendant refused COVID-19 vaccine and noting that "Defendant's own behavior [in refusing vaccination] is inconsistent with his position that he believes he is at increased risk from the virus" (quoting *United States v. Williams*, 2021 WL 321904, at *3 (D. Ariz. Feb. 1, 2021)).

Unfortunately, and inevitably, some inmates have become ill.  But BOP must consider its concern for the health of its inmates and staff alongside other critical considerations.  For example, notwithstanding the current pandemic crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the public.  It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry.  It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times.  And it must consider myriad other factors, including the availability of both transportation for inmates (at a time that interstate transportation services often used by

released inmates are providing reduced service), and supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

C.    Legal Framework

As a general matter, federal courts are prohibited from modifying a defendant's term of imprisonment once it has been imposed; however, this rule is subject to a limited number of narrow exceptions.    *Freeman v. United States*, 564 U.S. 522, 526 (2011).    Section 3582(c)(1) qualifies as one of these exceptions and now provides that a district court is authorized to grant a motion for reduction of sentence whether filed by the Director of the BOP or upon motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."    18 U.S.C. § 3582(c)(1)(A).    Importantly, however, a district court may grant a motion for sentence reduction *only* if the following three requirements are met: (1) there are extraordinary and compelling reasons warranting the reduction; (2) the reduction is consistent with the applicable policy statements issued by the United

13

States Sentencing Commission; and (3) the district court considers the factors set forth in Section 3553(a), to the extent they are applicable.   (*Ibid*).

To satisfy the requirements of Section 3582(c)(1)(A), a district court must engage in a three-step process.   *United States v. McGee*, 992 F.3d 1035, 1042-43 (10th Cir. 2021) (adopting test established in *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)); *see also United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021) ("Because this three-step test is consistent with the plain language of [Section 3582(c)(1)(A)], we adopt the test for use in this circuit.").

At step one, a district court must find whether extraordinary and compelling reasons warrant a sentence reduction.   *McGee*, 992 F.3d at 1043. To that end, "the most plausible interpretation of . . . [Section] 3582(c)(1)(A)(i) is that Congress intended to afford district courts with discretion, in carrying out the first step of the statutory test . . . [and] to independently determine the existence of 'extraordinary and compelling reasons,' and for the discretion to be circumscribed under the second step of the statutory test by requiring district courts to find that a sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission." *Id*. at 1044.

At step two, a district court must determine whether such reduction is consistent with applicable policy statements issued by the Sentencing

Commission.   *Id*. at 1048.   As highlighted by the Court in *McGee*, the Sentencing Commission's description of what constitutes "extraordinary and compelling reasons" must be viewed as a "general policy statement" rather than the equivalent of a statutory definition.   *Id*. at 1048.   As the Court in *McGee* opined:

> . . . in applying the first part of [Section] 3582(c)(1)(A)'s statutory test, [district courts] have the authority to determine for themselves what constitutes "extraordinary and compelling reasons," but that this authority is effectively circumscribed by the second part of the statutory test, i.e., the requirement that a district court find that a reduction is consistent with applicable policy statements issued by the Sentencing Commission pursuant to [Sections] 994(a)(2)(C) and (t).   In other words, we conclude that Congress did not, by way of [Section] 994(t), intend for the Sentencing Commission to exclusively define the phrase "extraordinary and compelling reasons," but rather for the Sentencing Commission to describe those characteristic[s] or significant qualities or features that typically constitute "extraordinary and compelling reasons," and for those guideposts to serve as part of the general policy statements to be considered by district courts under the second part of the statutory test in [Section] 3582(c)(1)(A).

*Id*. at 1048.[9]

---

[9] Notably, the Court in *McGee* further concluded, consistent with the Second, Fourth, Sixth, and Seventh Circuits, "that the Sentencing Commissions' existing policy statement is applicable *only* to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants."   992 F.3d at 1050 (emphasis supplied); *see also Maumau*, 993 F.3d at 836-37 (rejecting the government's position that Section 1B1.13 remains binding on the district court when a defendant files a motion for sentence reduction under Section 3582(c)(1)(A) directly with the district court).

Finally, at step three, a district court must address the applicable factors under Section 3553(a).   *Id*. at 102-43.   Importantly, a district court may deny compassionate release when any of the three prerequisites listed in Section 3582(c)(1)(A) is lacking and need not address the other factors.   *Id* at 1043. (citing, *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)).   Conversely, when a district court determines that compassionate release is warranted, "it must of course address all three steps."   *Id*. (quoting *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

D.   Argument

The defendant maintains he is a qualified candidate for release due to the spread of COVID-19, the need to care for his ailing mother, his age, his rehabilitation efforts, and time already served.   (Doc. 2026, Mot. for Release at

Medical Conditions

The defendant admits he does not suffer from any medical issues that put him at high risk of complications from contracting COVID-19.   (Doc. 2026 at 4.) Thus, under the circumstances, the defendant has not established extraordinary and compelling reasons pursuant CDC and / or DOJ guidelines allowing for consideration of compassionate release under Section 3582(c)(1)(A).

16

<u>Family Circumstances</u>

The defendant further claims he needs to take care of his ailing mother. (Doc. 2026, Mot for Release at 3, 5-6, 8-10.)   The defendant argues he is the only sibling who can provide "end-of-life care" and "can produce enough evidence that he is the only available child who can aide his mother." (*Id* at 5.) However, the defendant provides no legible records or information pertaining to his mother's medical condition. The medical records attached to his motion are illegible and therefore cannot provide evidence to support his claim.   (Doc. 2026-3, Medical Records.) The defendant contends, "letters stating the siblings cannot care for their mother during certain times of the day due to work can be obtaine[ed] with the assistance of counsel." (Doc. 2026, Mot. for Release at 9.) However, the defendant does not need counsel to submit affidavits from his siblings related to their ability to care for their mother, and more importantly, the defendant does not explain who is currently caring for his mother if not his siblings.

Section 1B1.13 of the Federal Sentencing Guidelines provides that a district court may reduce a term of imprisonment if, after considering the factors in Section 3553(a), that (1) "extraordinary and compelling reasons warrant the reduction;" (2) that the defendant is not a danger to the safety of any other

person or the community, and (3) the reduction is consistent with this policy statement.    Relevant to the issue presented here, the commentary under Section 1B1.13 suggests that extraordinary and compelling reasons exist when the defendant remains the only available caregiver for the suffering family member.    *See* U.S.S.G. § 1B1.13, comment. n.1(C)(ii); *United States v. Bucci*, 409 F.Supp.3d 1, 2 (D. Mass. 2019) ("When a defendant is the 'only available caregiver' for an incapacitated parent (perhaps a more unique occurrence given that inmates may have siblings or other family members able to care for their parents), then, it is likewise an 'extraordinary and compelling' reason warranting compassionate release."); *United States v. Quinones Rodriguez*, 2020 WL 5045203 (W.D. Va. Aug. 26, 2020) (release granted due to incapacitation of minor children's caregiver, leading to children being placed in foster care; defendant served 60% of 108-month drug sentence); *but see United States v. Ingram*, 2019 WL 3162305, at *2 (S.D. Ohio, July 16, 2019) (denying compassionate release to a defendant in order to care for ill mother because "[m]any, if not all inmates, have aging and sick parents"); *United States v. Nevers*, 2019 WL 7281929, at *6 (E.D. La., Dec. 27, 2019) (unpub.) (denying compassionate release to inmate with ailing family member when PSR reflected multiple other family members who were potential caregivers); *United States v. Carr*, 2020 WL 1815910 (D. Colo.

18

Apr. 10, 2020) (release denied as care is available for the defendant's minor children); *United States v. Ingram*, 2020 WL 3183698, at *2 (D. Mary., June 15, 2020) (unpub.) (finding that a parent's health concern does not qualify as an "extraordinary and compelling" reasons under Section 3582(c)(1)(A)); *United States v. Ledezma-Rodriguez*, --- F.Supp.3d ---, 2020 WL 3971517, at *7 (S.D. Iowa, July 14, 2020) (denying compassionate release to defendant with ailing mother given defendant's failure to "produce enough evidence that he is the only available child who can aide his mother.")[10]; *United States v. Brown*, 2020 WL 3440941, at *3 (S.D. Miss., July 23, 2020) (unpub.) ("Even if the policy statement could stretch to include a defendant's elderly parent, there is no indication that Brown is the only potential caregiver for his mother. Additionally, there is no evidence that Brown's mother actually requires care. Brown has submitted no medical records and no letters or affidavits from family members regarding his mother's condition and the type of care that she may need."); *United States v. Yoda*, 2020 WL 5502325, at *3 (S.D.N.Y. Sept. 11, 2020) (unpub.) (denying compassionate release on grounds that ailing parent did not

---

[10] In *Ledezma-Rodriguez*, the Court questioned whether U.S.S.G. § 1B1.13 comment. n.1(C) even extends to ailing parents in light of the commentary referencing only "spouse or registered partner."   2020 WL 3971517, at *7; *see also United States v. Hudec*, 2020 WL 4925675, at *5 (S.D. Tex., Aug. 19, 2020) ("Because caring for a sick and/or aging parent is not a qualifying 'family circumstance' under U.S.S.G. § 1B1.13(1)(A), the Court is without authority to grant compassionate release on this ground.").

rely exclusively on the defendant for care).

While the courts may disagree on the reach of Section 1B1.13 and whether an ailing parent, an unhealthy child, or an ill aunt can be considered alongside a spouse or registered partner, the one requirement that courts consistently require is evidence that the defendant is the *only* family member that is available for immediate care to the ailing parent.   The defendant clearly has siblings available to care for his mother, as they are currently providing that care. Under the circumstances, the defendant falls remarkably short of establishing that he is the sole family member available to care for his ailing mother.

Because the defendant has failed to establish that he is the only family member available to care for his mother, or that his relatives' circumstance is so dire that immediate release is warranted, the government respectfully moves this Court to overrule his motion and deny him the requested relief.

Additionally, when balanced against the factors below, the spread of COVID-19 and family circumstances, either individually or collectively, fail to demonstrate a situation so severe that early release from his sentence is warranted.

     E.    <u>Section 3553(a) Factors</u>

To the extent that a defendant can establish an extraordinary and

compelling reason for release based upon a confirmed and documented medical condition, satisfying that burden does not resolve the defendant's entitlement to a reduction in sentence or release from confinement.   This Court must still consider whether the defendant poses a danger to the community and other relevant factors under Section 3553(a) before making the ultimate decision on release.   Accordingly, this Court must consider (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants.   *See* 18 U.S.C. § 3553(a)(1)–(6)).

In this case, the defendant was convicted of conspiracy to manufacture, to possess with intent to distribute and to distribute 50 grams or more of cocaine base and to possess with intent to distribute and to distribute 5 kilograms or more of cocaine.   The investigation disclosed the defendant pooled his money with one of his coconspirators to buy quantities of cocaine and then distributed the cocaine through a network of individuals in the Leavenworth, Kansas area. (Doc. 1055 Presentence Report ¶31.) The defendant also possessed firearms in

furtherance of his drug trafficking].   (Doc.1055, PSR at ¶ 184.)   The defendant was ultimately held accountable for at least 150 kilograms of cocaine being distributed. (Id. at ¶¶176-177.)

Additionally, the defendant has a lengthy criminal history, some of it violent, including shooting a shotgun into an occupied vehicle (*Id*. at ¶¶ 193-207.)

The defendant has amassed the attached Disciplinary Record while serving his sentence.   See Government Exhibit 1, attached.

Applying the Section 3553 factors here favor against reducing the defendant's sentence to time served.   While the defendant may not appear to pose a direct danger to society upon release, he has 139 months remaining of his 360-month sentence.   Thus, a reduction to time served would diminish the nature and seriousness of his offense and the need for his sentence to continue to provide just punishment and otherwise promote respect for the law.

III.   <u>CONCLUSION</u>

For the foregoing reasons, the government respectfully moves this Court to reject the defendant's arguments for compassionate release and asks that his motion be dismissed.

Respectfully submitted,

DUSTON J. SLINKARD
United States Attorney
District of Kansas


By:      /s/  *Kim I. Flannigan*

Kim I. Flannigan
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6730
(913) 551-6541 (fax)
Kim.Flannigan@usdoj.gov
Ks S.Ct.No. 13407


## CERTIFICATE OF SERVICE

I certify that on May 26, 2022, I electronically filed this Response with the

Clerk of the Court by using the CM/ECF and that a copy of the same was mailed

through the United States Postal Service, first class, postage prepaid to:


Shevel M. Foy
11776-031
YAZOO CITY - FCI - LOW
Federal Correctional Institution
Inmate Mail/Parcels
PO Box 5000
Yazoo City, MS 3919


By:      /s/  *Kim I. Flannigan*

Kim I. Flannigan
Assistant United States Attorney

23